IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| PEARL RIVER COUNTY HOSPITAL | § § § § | PLAINTIFF |
| v. | § § | CIVIL NO. 1:13-cv-447-HSO-RHW |
| WADE WALTERS, et al. | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO REMAND**

BEFORE THE COURT is the Motion to Remand [46] filed by Plaintiff Pearl River County Hospital, asserting the Court lacks subject matter jurisdiction. This Motion is now fully briefed. Having considered Plaintiff's Motion, the related pleadings, and relevant legal authorities, the Court is of the opinion that Defendants have not established that federal subject matter jurisdiction exists. Plaintiff's Motion to Remand should be granted, and this case will be remanded to the Circuit Court of Pearl River County, Mississippi.

I. BACKGROUND

A.   Factual Background

Pearl River County Hospital ["the Hospital"] is a community hospital as defined by Mississippi law which was approved as a Critical Access Hospital ["CAH"] prior to the end of 2010. Compl. [1-1] at 3-4. Pursuant to federal law, as a CAH the Hospital is reimbursed by the federal Medicare program for inpatient and outpatient services at a rate of 101% of the reasonable costs to the Hospital for providing the

1

services. *Id.* at 4 (citing 42 U.S.C. § 1395f(1); 42 U.S.C. §1395m(g)(1)). In order to receive reimbursements the Hospital files what are referred to as "cost reports." *Id.* According to the Hospital, because it is a CAH and is reimbursed at a rate of 101% of reasonable costs, the more costs the Hospital incurs and places on its cost reports, the more the Hospital receives in reimbursements from Medicare. *Id.* at 5.

Sometime in June 2010, the Hospital hired Defendant Mike Boleware ["Boleware"] as Chief Executive Officer. *Id.* at 4. On September 21, 2010, Boleware recommended to the Hospital's Board of Trustees ["the Board"] that it have Defendant Performance Accounts Receivables, LLC ["PAR"], which the Hospital alleges was owned or controlled by Defendant Wade Walters ["Walters"], come in and "correct/train" the Hospital's business office. *Id.* at 4-5. Boleware represented to the Board that PAR usually worked under a contract that would pay PAR 7% of the collections PAR recovered. *Id.* According to the Hospital's Complaint, on October 5, 2010, the Board agreed to contract with PAR "through the terms of the PAR contract." *Id.* at 5. However, the contract with PAR did not call for PAR to receive 7% of the collections PAR recovered, but instead for PAR to be paid 7% of "all collected revenue received from Hospital Net Revenues." *Id.* The gravamen of the Hospital's Complaint is that this arrangement led to a scenario in which Defendants attempted to maximize the amount of Medicare reimbursements sought in the Hospital's cost reports as a method of increasing the fees Defendants would ultimately receive. *See id.*

The Hospital alleges that over the course of the following months, Boleware

2

and Walters, by operating through other individual Defendants whom they allegedly controlled and by entering into contracts with other Defendant companies without the authority of the Board, engaged in a course of conduct which had the effect of incurring expenses on behalf of the Hospital which were ultimately included in the Hospital's cost reports in an effort to increase the fees paid to PAR. *Id.* at 5-10. As part of this purported scheme, Boleware and Defendant Hope Thomley ["Thomley"], with the guidance of Walters and "as part of a conspiracy to defraud the Hospital and Medicare," *id.* at 7, arranged a transaction with Defendants Wellness, Inc., d/b/a Wellness Environments ["Wellness"] and Kingsbridge Holdings d/b/a Kingsbridge Healthcare Financing ["Kingsbridge"] by which the Hospital would lease equipment through a financing arrangement with Kingsbridge, *id.* According to the Complaint,

> [t]he leasing of equipment would be an expense that could be included on the cost report and reimbursed to the Hospital by Medicare. However, the actual lease proposal included architectural fees, construction fees, and other costs that are not considered recoverable Medicare lease expenses. Instead, these are capital expenditures which are not considered reimbursable lease expenses by Medicare.

*Id.*

The Hospital alleges that the foregoing approach effectively increased the Medicare reimbursement to the Hospital, thereby increasing PAR's fees. *Id.* at 8. The Hospital asserts that throughout the period of their involvement with the Hospital, Defendants Walters, Boleware, and Thomley caused the Hospital to enter into contracts with other Defendants which were not authorized by the Board and which had the effect of unlawfully increasing the Hospital's Medicare reimbursements, all in an effort to increase the compensation Defendants would

3

receive through the PAR contract.  *Id.* at 9-10.  The Hospital also claims that Defendants, and in particular Walters, Boleware, and Thomley, deliberately manipulated invoices for renovations to avoid Mississippi state bidding laws and that, upon termination of the Hospital's relationship with PAR and Boleware, individuals or entities under Walters' control deleted important and proprietary documents from the Hospital's computers and removed documents and other items of value from the Hospital without the permission of the Board.  *Id.*

B.    Procedural History

The Hospital filed suit in the Circuit Court of Pearl River County, Mississippi, on November 1, 2013.  *See* Compl. [1-1].  Named as Defendants were Walters, Thomley, Boleware, PAR, Performance Capital Leasing, LLC, Wellness, Kingsbridge, Stepping Stones Healthcare, LLC ["Stepping Stones"], Projx, LLC ["Projx"], and Piercon, Inc. ["Piercon"].  *See id.*  The Complaint advances claims against Defendants for engaging in a scheme to defraud the Hospital and Medicare, civil conspiracy to take over Hospital operations for Defendants' benefit, making fraudulent misrepresentations to the Board, breach of contract, acting without authority to violate Mississippi state bidding laws, conversion, negligence, and breach of fiduciary duty.  *See id.*  The Hospital seeks declaratory relief, along with compensatory and punitive damages, attorneys' fees, costs, and pre- and post-judgment interest.  *See id.*

Defendant Kingsbridge removed the case to this Court on December 3, 2013, invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Notice of Removal [1].  The other Defendants have joined in the removal.  *See* Joinders [2], [3],

4

[4], [9], [12], [23], [26].  According to Kingsbridge, the Hospital instituted this lawsuit after other Defendants in this case had filed separate suits in state court against the Hospital for nonpayment of their respective invoices.  Kingsbridge Mem. in Opp'n to Mot. to Remand [71], at 2-3.  The Hospital has apparently asserted counterclaims in at least one of these lawsuits.  *Id.* at 8.  These three state court lawsuits were consolidated by the Pearl River County Circuit Court into a single proceeding on October 28, 2013, less than a week before the Hospital instituted the present litigation.  *Id.* at 3.  The state court litigation apparently remains pending.

As a basis for invoking the Court's jurisdiction over the present matter, Kingsbridge essentially argues that although a federal question does not appear on the face of the Hospital's Complaint, the allegations in the Complaint necessarily raise a substantial and disputed federal issue which supports removal.  Notice of Removal [1], at 1.  Kingsbridge maintains that the Hospital's allegations of fraud with respect to the inclusion of certain items on the cost reports cannot be resolved without interpretation and application of federal law with respect to Medicare reimbursement, such that the Complaint necessarily raises a substantial and disputed federal issue sufficient to support federal question jurisdiction based upon the United States Supreme Court's decision in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308 (2005).  *Id.* at 2-7.

The Hospital has filed a Motion to Remand [46], arguing that no federal question appears on the face of the Complaint, nor do the allegations of the Complaint raise a substantial federal issue such that the Court is divested of

5

jurisdiction to hear this case.  Mot. to Remand [46], at 1.  All parties have had an opportunity to respond to the Motion.

## II.  DISCUSSION

A. Standard of Review

28 U.S.C. § 1441 provides for the removal of civil actions brought in a state court of which the district courts have original jurisdiction.  28 U.S.C. § 1441(a) (2012).  "A federal district court may exercise original jurisdiction over any civil action that either satisfies diversity requirements or that arises under the federal constitution, statutes, or treaties—commonly referred to as 'federal question' jurisdiction." *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258–59 (5th Cir. 2014) (citing 28 U.S.C. §§ 1331, 1332, 1369).  "Thus, under § 1441, removal is proper *only* when the court has original jurisdiction over at least one asserted claim under either federal question or diversity jurisdiction."  *Id.* at 259 (emphasis in original) (citation omitted).  Any doubts regarding whether removal jurisdiction is proper should be resolved against a finding of federal jurisdiction.  *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014).

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

> An action can arise under federal law for purposes of § 1331 in two ways: In a well-pleaded complaint (1) the party has asserted a federal cause of action, *see Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S .Ct. 585, 60 L. Ed. 987 (1916), or (2) the party has asserted a state cause-of-action claim that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain

6

> without disturbing any congressionally approved balance of federal and state judicial responsibilities," see *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).

*Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013).

B. <u>Analysis</u>

    1. <u>Federal Question Jurisdiction</u>

No party seriously contends that a federal claim appears on the face of the Hospital's Complaint. Therefore, federal question jurisdiction in this case will lie only if Defendants can establish the second method of demonstrating the existence of a federal question, that is, that the Complaint asserts a state law claim that necessarily raises a stated federal issue, actually disputed and substantial, which this Court may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. *See Grable*, 545 U.S. at 314.

While the Supreme Court in *Grable* confirmed the notion that a federal court ought to be able to hear claims recognized under state law that turn on substantial questions of federal law, it cautioned that the mere need to apply federal law in a state law claim will not suffice to open the "arising under" door to federal court. *Id.* at 312-13. In such cases, federal jurisdiction "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313. The Supreme Court further circumscribed application of this doctrine by holding that even when a state action discloses the presence of a contested and substantial federal issue, the exercise of federal jurisdiction is still subject to a "possible veto," qualifying for a

federal forum only if federal jurisdiction is "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 313-14. The Supreme Court has characterized as "slim" the category of cases which meet the *Grable* standard. *See Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).

The United States Court of Appeals for the Fifth Circuit has held that, although the parties may ultimately litigate a federal issue in their case, that fact alone does not establish that the suit, "'that is, the plaintiff's original cause of action, arises under the Constitution' or laws of the United States." *Venable*, 740 F.3d at 942 (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). "'[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.'" *Id.* at 943 (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936)).

As the Supreme Court has recently concluded, however, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue . . . ." *Gunn v. Minton*, 133 S. Ct. 1059, 1066 (2013) (emphasis in original). Instead, the substantiality inquiry focuses on the importance of the issue to the federal system as a whole. *Id.* Stated another way, this Court's analysis should focus not on the interests of the litigants themselves, but rather on the broader significance of the particular federal issue to the federal system. *Id.*

### 2. The Hospital's State Law Claims

There can be no dispute that the face of the Hospital's Complaint advances only state law causes of action. *See* Compl. [1-1]. Kingsbridge frames the federal issue as "whether the inclusion of construction and construction-related costs within a medical equipment lease violates the federal Medicare statutory and regulatory scheme." Kingsbridge Resp. in Opp'n to Mot. to Remand [70], at 2. Those other Defendants that have responded to the Hospital's Motion essentially adopt the arguments raised by Kingsbridge to support their opposition to remand. In order to carry their burden of demonstrating the existence of federal jurisdiction, then, Defendants must first show that whether construction and construction-related costs within a medical equipment lease are properly reimbursable under the federal Medicare statutory and regulatory scheme constitutes a disputed and substantial federal issue that is an essential element of one of the Hospital's causes of action. *See, e.g., Venable*, 740 F.3d at 943.

Although the Complaint advances a number of state law claims, interpretation of federal Medicare law is arguably only germane to the Hospital's fraud, misrepresentation, and conspiracy claims. To establish a claim for fraudulent misrepresentation under Mississippi law, the Hospital must show: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and

9

proximate injury.  *Saucier v. The Peoples Bank of Biloxi*, - - - So. 3d - - -, 2014 WL 1422980, at *14 (Miss. Ct. App. April 15, 2014) (quoting *Virginia Coll., LLC v. Blackmon*, 109 So. 3d 1050, 1054-55 (Miss. 2013)).  Proof of a conspiracy under Mississippi law requires a finding of "'(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result.'" *Gallegos v. Mid-South Mortg. & Inv., Inc.*, 956 So. 2d 1055, 1060 (Miss. Ct. App. 2007) (quoting *Gallagher Bassett Servs. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004)).

The gravamen of Defendants' argument is that federal jurisdiction exists in this case because interpretation and application of federal Medicare statutes and regulations will be required in order for the Hospital to prove an essential element of its claims, thereby raising a disputed and substantial federal issue.  Assuming without deciding that interpretation and application of federal law will be necessary in order for the Hospital to establish its fraudulent misrepresentation, conspiracy, and perhaps other of its state law claims, such interpretation and application would potentially resolve only some, but not all, of the essential elements of those claims. Moreover, a plain reading of the Complaint reveals that some of the Hospital's state law claims, for instance the claims for conversion and for alleged violations of state bidding laws, do not implicate any federal law or issue.

While the relevant federal issue here may be disputed, resolution of the relevant federal issue may be an important and essential element of certain of the Hospital's claims, and the issue may indeed be of substantial importance to the

parties and to the resolution of this particular dispute, this is not enough by itself to meet the substantiality requirement as the Supreme Court has defined it. Defendants have not carried their burden of demonstrating the broader importance of the disputed federal issue to the federal system as a whole.  Whether or not the Hospital is entitled to reimbursement for the items in question in this case, while perhaps calling for an interpretation of what items may or may not be reimbursable under federal Medicare statutes and regulations, has not been shown to have broader significance to the federal system as a whole.  However the state court might decide these federal issues and apply them to the facts of this particular case, the Court is not persuaded that, whatever the outcome, issues of substantial importance to the federal system as a whole will be implicated.

Nor have Defendants shown that, even assuming the substantiality requirement were satisfied here, vesting jurisdiction in this Court would be consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.  In sum, Defendants have not carried their burden of demonstrating the existence of federal question jurisdiction.

Because Defendants have not shown that the Complaint asserts a state law claim that necessarily raises a stated federal issue, actually disputed and substantial, which this Court may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities, *see Grable*, 545 U.S. at 314, and because no other basis for this Court to exercise federal jurisdiction exists, the

Hospital's Motion to Remand [46] should be granted, and this case should be remanded to state court.

### III.  CONCLUSION

Because this Court lacks jurisdiction over the Hospital's Complaint, its Motion to Remand [46] will be granted, and this case will be remanded to state court.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Pearl River County Hospital's Motion to Remand [46] is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED**, that this civil action is remanded to the Circuit Court of Pearl River County, Mississippi, and that a certified copy of this Order of remand shall be immediately mailed by the Clerk to the clerk of the state court pursuant to 28 U.S.C. § 1447(c).

**SO ORDERED AND ADJUDGED**, this the 12th day of September, 2014.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE